Next case on the docket is Vaughn v. Carbondale Police Pension Board. It is 5-13-0457. Your Honor, counsel, may it please the court, my name is Patrick Sharpe. I'm here today on behalf of the plaintiff appellant, Jeffrey Vaughn, in a matter against the Carbondale Police Pension Board. This morning I'll be asking the court to vacate the findings of the Circuit Court's June 14, 2013 order terminating Mr. Vaughn's pension benefits. The facts of the case in question are quite simple, Your Honor. Mr. Vaughn was injured back in 2005 and his initial petition for pension benefits was denied by the Police Pension Board. That decision was appealed to the Circuit Court, which then reversed the board's findings. That case was then also appealed to this court, in which this court affirmed the ruling of the Circuit Court and found that Mr. Vaughn in the focus court was clearly disabled at that point. After the appellate process was finalized, Mr. Vaughn then began to receive the pension benefits. In 2012, Mr. Vaughn was requested to perform an examination pursuant to the statute. Mr. Vaughn did so. As required, he visited a doctor with HERDA, and Dr. HERDA at that point performed a basic examination of Mr. Vaughn. Once that examination was done, only then did the doctor in question ask for Mr. Vaughn's medical records. To, again, bring back the previous appeal, during that time six doctors were utilized to help determine that Mr. Vaughn was clearly disabled at that point, and only one doctor stated that Mr. Vaughn was not disabled, that being a Dr. Cantrell, who will be in court. And the reason that Dr. Cantrell is important is when Dr. HERDA gave his report as to the state of Mr. Vaughn's health, he relied on Dr. Cantrell's findings during the previous appeal. He, being Dr. HERDA, the most recent doctor, performed no new testing and relied only on the 2008 testing that was done during the appeal where this court, again, stated that Mr. Vaughn was clearly disabled. Most importantly as well, at no point during Dr. HERDA's report was it claimed that Mr. Vaughn was no longer disabled or that he recovered from the disability in question. Instead, it simply stated that Mr. Vaughn was capable of returning to work. Once the board determined Mr. Vaughn's benefits, at a very quick hearing in which I believe the transcript is attached to my brief in Appendix B, there was no evidence, there was no testimony, there was no deposition added to the record. Quite simply, the attorney for the board presented Dr. HERDA's findings and the board ceded all of their decision-making to that letter, which included a pre-prepared form done by the board, which stated, again, not that Mr. Vaughn was no longer disabled, but instead that he was capable of returning to work. And that form is also attached in our Appendix B. What is the difference between the two in your mind? Your Honor, we believe that that's an important distinction based on the statutory language. When we look to Section 116, it requires both a finding of a medical examination that he's recovered, or the pensioner, excuse me, has recovered from the disability, as well as a capability to return to work. That is found in multiple sections. And not only that, Your Honor, I believe in all of the cases cited, both in my brief, opposing counsel's brief, and the ruling of the circuit court, all those cases found that the pensioner, in the event they were denied their disability, had recovered, or in the event they were able to continue their disability pension, had not recovered from the disability. So that is why we believe at this point that that's an important distinction to make, just based on the language of the statute itself. So you would agree that the statutes allow for just one physician to make the decision, right? I would absolutely agree. I mean, it's a different time and a different space. Correct, Your Honor. And that would be our contention as well. And I believe if you look to the facts of the Peacock case, which I believe was the case in which the public court looked to the determination of whether or not one doctor would be appropriate, in that case we still had one doctor who performed, and excuse me, that was actually the Trent Narrow v. Police Pension Fund. There was one doctor who performed four examinations over a period of two years. So, yes, while we would agree that at times one doctor would be an appropriate means to determine whether or not someone has continued their disability, we don't have that present in this case. What we have in our case is a doctor who replied that her reply only on a test done in 2008, which, again, this court itself stated led to a finding that Mr. Vaughn was clearly disabled. There were no new test dones, only a cursory physical examination. Mr. Vaughn was working at the time he was seen. That was correct, Your Honor. And in the doctor's notes, there seems to be at least a concern by Dr. Ruperta that he had some kind of disability in his arm and hand. And the doctor actually sought out medical records to determine whether it would be a radicular problem or an ulnar neuropathy. Correct. So he did make some efforts before he declared Mr. Vaughn capable of returning to work. Excuse me. Your Honor, our position and our concern with that is the findings that he utilized to help him come to that conclusion were Dr. A. Truss. So there were no other doctors that I believe did the same. I believe it was an ulnar test that helped him come to that conclusion. So, again, it was our real concern at this point is just the circumventing of the court's previous order. We had six doctors. In light on the results of the test and not what the doctor said. Well, correct, but those results were present in 2008. Those results led to a finding that he was clearly disabled. You used the term a cursory examination. Is there any evidence in the record to support that? I assumed it was a complete examination. And after making that examination, he referred to the prior medical history and reached a conclusion. And, Your Honor, I believe the only documentation that really illustrates the extent of that physical examination was contained within our Appendix B. And it was the acute follow-up visit, which, again, stated that he had done somewhat of a physical examination. And, again, in our opinion, the symptoms shown during that physical examination are still on point with what was present during the 2005 entry and appeal where he was held clearly disabled. Again, what I don't see and I don't believe the record reflects is anything that shows an improvement in Mr. Vaughn's condition. So, again, if he was clearly disabled the last time we were around and now we're on his first medical examination, we bring in one doctor who relies on old tests and relies on the one doctor that this Court had previously said, we're not going to rely on the opinions of this gentleman who flies in the face of the findings of the other five doctors that were utilized. Have you raised the issue of due process? The issue of due process was raised in our opinion as a part of the initial complaint. There is a paragraph saying that the hearing was done at an unknown time. Again, that is really the basis of our claim that due process was brought up during the circuit court. Do you believe your client was entitled to a hearing before the Board? We absolutely believe that our client was entitled to a formal hearing, Your Honor. And in order to back that claim, we would look just simply at the testifying of Matt in the U.S. Supreme Court with the three factors, the first being an effect on a private interest, which the ability to receive a pension has already been held to be deemed a private interest in the Peacock case, the risk of an erroneous deprivation, which is what we're arguing today, and finally, the third, that there's a government interest that won't be overly burdened in the event that we ask for a hearing. Again, there was a Board meeting. It would have been extremely simple to have done notice beyond simply posting it where I don't believe that the record reflects. Again, they were able to give Mr. Vaughn notice of a requirement for a medical examination, yet it seems a little disappointing that they weren't able to provide him notice of a hearing. On that point as well, Your Honors, I would point you to the Antonelli case cited in the opposing counsel's brief, which I believe shows in the past the ability of a Board to almost bend over backwards to ensure that they have ample medical evidence to make a decision. In the Antonelli case, the police board not only started a hearing in which they gave proper notice to make sure that the plaintiff was there, they actually continued that hearing to make sure that the plaintiff was able to provide his own medical testimony. Again, in our case we have a brief hearing in which the Board itself even mentions that it's a little surprising that one doctor during a review can trump the three doctors during the original. Again, Dr. Acurda is not present. We have no evidence provided. We have no deposition provided. We simply have the Board discussing a letter. Quite honestly, I don't even really believe that they had a conversation as to the basis of even credibility of the doctor in question. I believe even in the event that we assume that due process was allowed, there's not even sufficient evidence to back the Board's claim. There's actually no evidence really to back the Board's claim pursuant to what the statute requires as a result of that medical examination. Again, we need to show that not only is he capable of work, but that he's recovered from his disability. Let me go back to the due process argument and make sure I'm correct on the facts here. This due process argument was only raised in the trial court on a motion to reconsider. Is that correct? In other words, your client did not go to the Board and say, I'd like to have another examination, didn't raise this with the circuit court in the pleadings, but only on the motion to reconsider. Your Honor, I believe the record will reflect that a complaint was filed with the Board requesting a rehearing as well as a complaint with the circuit court to just have the case move forward as well. And part of the issue with that is if you look to the appendix, you'll see that the letter stating that Mr. Vaughn's pension benefits were denied is an undated letter. So at that point, there was some question as to a running of time as to what was going to be the proper procedure. Just for timing, it looks like August 3rd, 2012, Mr. Vaughn requested a hearing. I believe so, Your Honor. And then on August 31, the Board notified him that the hearing was denied. Yes, Your Honor. I believe those dates are correct. But don't you think Peacock, the Peacock case, says it requires a due process hearing under these circumstances? Absolutely, Your Honor. Again, at this point, it is, at least in my opinion, I believe when you utilize the Matthews test, it is absolutely a right that it should be protected by even basic due process. Again, I believe if you look at Peacock, you look at Antonelli, you look at the Trenton Arrow case, all of those cases provided for a hearing. And again, even just for the purpose of the review is to ensure the integrity of the pension fund. I have questions as to whether or not we can say that the integrity of the pension fund is continued when we don't have a formal hearing, when a party who has been denied pension benefits lacks even the ability to go and review the allegations made. In conclusion, Your Honors, again, to restate, Mr. Vaughn was injured. The Board did everything that they could to deny him his benefits. They disregarded the bulk of the evidence. They relied only on one doctor. They did not prevail. They were then able to review that, and instead of going through, giving an independent doctor time, allowing a doctor to look at all six of the medical opinions, we have one doctor who utilized previously done tests, done by the doctor who this Court has already said should not be relied upon. As a result, there was no hearing. The Board did a quick hearing, not even a hearing, a Board meeting, which just said, yes, here's what the letter says. They ceded all authority to this doctor, turning to Mr. Vaughn's benefits, and that is why we are here today. As a result, Your Honors, we would ask this Court to find that there is not only a lack of due process but insufficient evidence to support the Court's claim. We would ask that the circuit court order be vacated and that Mr. Vaughn be entitled to his pension benefits. Thank you. Good morning, ma'am. Please, the Court. My name is Scott Hendricks, and I represent the Carbondale Police Pension Board. In this matter of enrage at Vaughn, I'm asking the Court to affirm the Board's decision to terminate Mr. Vaughn's disability payments and also to make a finding that the plaintiff has waived any argument with regard to his proper notice claim as set forth in his motion to reconsider to the circuit court. Mr. Hendricks, I'd like to ask you that question. Yes, ma'am. We are now charged with the obligation of reviewing the administrative hearing, correct? Or is it the trial court's decision that we're to review? I believe you're to review the Board's decision, Your Honor. But the Board was asked for a hearing, so how do you waive it in the circuit court? You mean for a rehearing? No, on August 3rd, after Mr. Vaughn received the decision, by my reading of the record, he wrote a very specific letter asking for a hearing. Asking for a rehearing. Yes, he did, Your Honor. Well, whether it's a hearing or a rehearing. My question to you is, if you argue waiver, that seems to be something you would argue in the circuit court. But isn't it true that we're actually reviewing the conduct of the administrative agency here? I think with regard to the request, or with regard to the decision to determine his pension benefits, yes, I believe we're reviewing that. Most of those are questions of fact, that they determine whether he was disabled or not. And based on Dr. LaPerda's decision or his report and examination, it is not. I know all those facts. How do you argue waiver if he writes a letter to the Board asking for a hearing? Well, I think the waiver is the waiver on appeal of the denial of that request for rehearing or hearing. And that, as indicated in my brief, the Police Pension Board in Carbondale does not have a mechanism for a request for a rehearing. And if the Court looks at the sequence of events, his letter was dated August 3rd. Four days later, he filed his complaint for administrative review before the Board even had an opportunity to probably even see or decide on a rehearing. So the matter was then before, theoretically before the circuit court at that time, which was a request for review of denial of pension benefits based on his lack of disability. But you would agree that the letter from the Board was undated, and so there was a possibility he could blow his 30 days. I believe we all agreed that that was received on June 9th. Well, you agreed that at what point in time? I believe his appeal period runs from the date of the receipt of that notice, which was June 9th, not the date that it was written or mailed, the date it was received. So his 35 days would begin to run on the date he received that, which was June 9th. So he was well aware of what his time period would have been. Were you present at the Board meeting? Which one? I think I was present for the Board meeting with regard to the review of the doctor's reports. Yes. I don't have a date on that. At that hearing, there were four police officers that were under 50, that their medical reports were being reviewed that day. And three of the four, the Board decided that they were still disabled and could continue receiving their benefits. And the Board decided after reviewing Dr. McCurdy's report that Mr. Vaughn was able to perform the actions as a police officer, and therefore sent him to notice that his disability benefits were terminated. And I would point out that the counsel for Mr. Vaughn stated that there was no stating that he recovered from the disability, and that the only report for Dr. Reperta, which was set forth in their appendix, was what was referred to as handwritten notes on his acute follow-up visit sheet. Previous to that, there was a document immediately preceding that in their appendix, is a letter written by Dr. Reperta that outlines all that he looked at and what he did with regard to Mr. Vaughn to reach his conclusions. And as Justice Welch pointed out, Dr. Reperta did not rely on any conclusions of Dr. Pantrell, but only looked at the testing that he had done. If you note that much of that testing dates back to 2008. And as the Court is well aware, doctors, when they do an exam, like to know what the history is of that patient. And that was the purpose of getting those records so he could compare post and current symptoms and statements made by Mr. Vaughn. And I believe in that letter, it clearly indicates that there are no residual findings. He referenced that there was no residual findings on the MRI done on July 28th that suggest ongoing compression fractures. He believes that compression fractures have no current bearing on his ability to work as a police officer. So he's basing that on his examination of Mr. Vaughn and the prior testing of when he exhibited the compression fractures, which he's not exhibiting at this date, and that's why he makes that determination that Mr. Vaughn is able to return to work. The fact that the Police Pension Board, as counsel says, relied on that. The statute states in the Pension Act, under section 3116, it says that upon medical examination, the board shall certify the chief of police that the member is no longer disabled and is able to resume the duties of his or her position. So that act directs them to get a physical exam of the officer, which is exactly what they did. They reviewed that examination. That examination revealed that he had, at least based on their reading of that, that he was able to perform his work as a police officer, which obviously would mean that he has recovered from his disability. And therefore, they made that determination as the court is aware that that is a finding of fact that is not to be set aside unless it's against the manifest way. Do you believe that Mr. Vaughn was entitled to a hearing before the police board? I think he did have a hearing before the police board. I think they did conduct a review of Dr. Rupert's record. Was Mr. Vaughn present? I believe he was not present at that hearing. And was he allowed to state anything on his behalf? He was not because he was not present, but he was given notice by the posting of the police board bench. Where was it posted? On the Internet and at the city hall. And you believe that was adequate notice? I believe it was adequate notice because Mr. Vaughn had a period of many prior hearings based on those same kind of notices. Okay. When I read the minutes of the meeting of June 26th, it seems that members of the board are very concerned about whether Mr. Vaughn is even entitled to a hearing. At one point he says, someone says, there's nothing in the law that says we have to have a hearing or anything else. And it goes on repeatedly for several lines. It seems that the board was concerned that they needed to have a hearing. And then somebody says, nothing in the law that we have to do. Your Honor, the statute, again, that they rely on against giving the notice is found in section 3-116. And what it requires is examination by a physician and a determination by a physician whether he's able to return to work as a police officer. But due process, as we know it in the legal world, means that somebody's going to get an opportunity to be heard in a fair and impartial manner. And just because you post something on the wall of the police department or the municipal building when you've got a man's pension involved, you think it's enough notice and the fact that he didn't show up, he had his hearing. Despite the fact that the board members are saying, we don't need to have a hearing. That's your position? Well, Judge, I think there was a hearing. It was conducted in the review of the medical records and Dr. McCurdy's report. So there was a hearing. So we differ on what is a hearing. Because the due process says there must be some hearing. It doesn't say to what extent that hearing has to be. And there was a hearing. But I put forth the fact that the plaintiff waived any due process argument in this case because he never raised it until almost a year and a half after the initial request. So you don't think the August 3rd letter asking for a hearing is the letter that we should focus on? Well, if we do, then that request was denied. And that request was never appealed beyond that point. And that's the waiver. I mean, if you look at the sequence of events, that letter was written August 3rd. He filed his complaint for administrative review on August the 7th. And that was for the court to determine whether the decision was against the manifest way of the evidence based on the board's ruling. He was given the notice of denial of that hearing on August 31st of 2012. Subsequent to that, there were additional pleadings filed in the complaint in the administrative review file. Not only by myself, but also by plaintiff's counsel, one of them being an additional exhibit. At no time did he raise an issue of due process at that time. We went to a hearing before Judge Salverson on January 23rd, 2013, six months later. And that was never raised as an issue at that hearing. In fact, the court, we stipulated the court could rule based on the complaint, the answer, and the other documents that we gave to the judge, which was an issue of manifest state of the evidence. And not until the judge ruled on June 14th, 2013, that the pension board was correct in his findings that he was no longer disabled and affirmed that decision. Did Mr. Vaughn on July 8th file a document with the court saying, oh, I want a reconsideration of my request for a hearing. Which was more than almost a year later. At no time was that raised before. And that's why I'm saying that argument's been weighed. Well, I see that it was actually you who gave a couple of opinions in here that no hearing was required. I think you say, no, I don't think it requires any special meeting or hearing. And then in parentheses it has Hendricks. Is that you? Before and thereafter. But I would respond to that, that section 3116 does not require any hearings to be set. That's what the pension statute provides. But I do say to the court that there was notice of the hearing because they used the same procedure that they have used for years in providing notice to all participants. As well as ones that are before the board and ones that are not before the board. Because it's an open meeting, anyone can appear and present information to the board. But again, I still don't think we get to the issue of the hearing. I think it's a waiver because you never raise it properly under both the administrative review law or the appellate rules for an appeal. And for those reasons, we're asking the court to affirm the decision of the board as they're finding it's not against the manifest way of the evidence. And that the court find that there is a waiver of the due process argument because it was untimely. Thank you. Thank you, counsel. Rebuttal. I will make two extremely brief points. The first being that as opposing counsel said, there were four pensioners up for review at that meeting. And I don't believe the record reflects that any of them were present. So I believe that would raise some issues regarding whether or not notice was proper. And the second point being, while opposing counsel stated that Dr. Ruperto did not rely on Dr. Cantrell, I do find it interesting that he absolutely parroted the conclusions that Dr. Cantrell had during the initial appeal. And that there would be some need for a work hardening program. And I believe Dr. Cantrell was the only doctor who advised that. Thank you. Thank you, sir. The court will take a short recess. In case we can't enter, all rise.